NOT FOR PUBLICATION                                                                                         CLOSED

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| EDWARD J. MIERZWA,  ) | |
| ) | Civil No. 04-5268 (FSH) |
| Plaintiff,  ) | Hon. Faith S. Hochberg, U.S.D.J. |
| vs.  ) | |
| ) | **OPINION & ORDER** |
| John Keating, Joseph Marsh, & Jeffrey Stewart  ) | |
| ) | Date: July 26, 2007 |
| Defendants.  ) | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant police officers Joseph Marsh, Jeffrey Stewart and John Keating's ("Defendants") Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. The Court has reviewed the submissions of the parties and considered the motions on the papers in accordance with Fed. R. Civ. P. 78.

## I.     Facts and Procedural History

In October of 2005, Plaintiff wedged his automobile between two parked vehicles on the street while attempting to back out of his driveway. Plaintiff called the Garfield Police Department for assistance. The police officers responding to the call were successful in freeing Plaintiff's automobile. Two days later, Plaintiff again called the Garfield Police Department, complaining he was unable to exit his driveway because vehicles were again blocking his exit.

According to the police incident report, Plaintiff shouted obscenities at Defendants upon

their arrival.  Defendants told Plaintiff he was under arrest for tumultuous behavior after Plaintiff refused to calm down and step to the curb.  Upon approach by Defendants, Plaintiff flailed his arms and attempted to break free from Defendants.  Defendants then used force to tackle Plaintiff to the ground; Plaintiff continued to resist while on the ground.  Defendants then used pepper spray to subdue Plaintiff and effectuate the arrest.

Defendants took Plaintiff to Garfield Township Police Headquarters, where he was treated by EMS personnel for the effects of the pepper spray.  Defendants then took Plaintiff to Bergen Regional Medical Center for psychiatric evaluation and treatment.  The following day, Plaintiff was treated at Mountainside Hospital for a sprained knee and was discharged.

Plaintiff subsequently filed suit against multiple parties pursuant to 42 U.S.C. § 1983 in the United States District Court for the District of New Jersey.  This Court has previously dismissed Plaintiff's claims against the United States, the State of New Jersey, the City of Fair Lawn, the City of Garfield, the City of Pequannock, and the Garfield Police Department, including personnel of the Garfield Police Department specifically involved with the arrest.  Plaintiff alleged that the remaining Defendants "depriv[ed] Plaintiff(s) [of his] Civil Rights Guaranteed by the Fourteenth Amendment" because of the "unreasonable and excessive force" used to arrest him.  (Second Am. Compl. ¶ 17.)

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants filed a Motion to Dismiss Plaintiff's excessive force complaint.  On August 9, 2006, this Court converted the 12(b)(6) motion into a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, after determining that Plaintiff's allegations were factually sufficient to state a claim of excessive force, despite the fact that they were contradictory to the Garfield Police incident report.  <u>Mierzwa v. City of Garfield</u>, Docket #

105, No. 04-5268, pg. 7 (D.N.J. Aug. 9, 2006).  At that same time, this Court also determined that it was premature "to rule on the [Defendants'] qualified immunity issue as currently raised" because "the qualified immunity issue will be more appropriately resolved in light of the factual development gained through discovery."  Id.

Discovery is now complete.  Therefore, the qualified immunity issue raised in Defendants' currently-pending summary judgment motion is ripe for review, and Plaintiff has had ample time to seek evidence during discovery.

**II.     Standard of Review**

Pursuant to Fed. R. Civ. P. 56(c), courts may grant summary judgment to a moving party if that party satisfies its burden of production by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  If the moving party successfully demonstrates the absence of a genuine issue of fact, the burden shifts to the nonmoving party to "make a sufficient showing" that a critical element of the case is factually disputed.  Id. at 323.  The nonmoving party may not rest on mere allegations, but must provide specific evidence suggesting a material dispute of an essential fact. Id. at 322.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "Colorable" or "not significant probative" evidence by the nonmoving party will also fail to successfully block a summary judgment motion.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

**III.     Analysis**

Defendants now move for Summary Judgment with respect to Plaintiff's claim of excessive force, asserting qualified immunity. Excessive force claims fall under 42 U.S.C. § 1983, which requires a plaintiff to establish that: (1) he or she was deprived of a federal right secured by the Constitution, (2) by a person acting under color of state law. Popow v. City of Margate, 476 F.Supp. 1237, 1240 (3d Cir. 1970) (citing Adickes v. S.H. Kress and Co., 398 U.S. 144, 150 (1970)). Neither party contests the presence of the second criterion; both accept that Defendants acted under color of state law as police officers employed by the City of Garfield. Regarding the first criterion, Plaintiff claims that Defendants "depriv[ed] Plaintiff(s) [of his] Civil Rights Guaranteed by the Fourteenth Amendment" while arresting him because Defendants "caus[ed] reckless endangerment upon Plaintiff with the use of unreasonable and excessive force." (Second Am. Compl. ¶ 17.)

Courts use a two-pronged test to analyze claims of qualified immunity: 1) whether the plaintiff "has alleged the deprivation of an actual constitutional right at all"; and 2) whether that right was clearly established at the time of the alleged violation. Sutton v. Rasheed, 323 F.3d 236, 250 n.27 (3d Cir. 2003) (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)). To determine whether the Defendants deprived Plaintiff's constitutional rights by using excessive force, the Court applies the 'reasonableness test' of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989). The 'reasonableness test' weighs three circumstantial factors at the time of the arrest: 1) the severity of the crime; 2) whether the suspect posed an immediate threat to the safety of the officers or others in the area; *or* 3) whether the suspect actively resisted arrest or attempted to evade arrest. Id.

In this case, there is no genuine issue of material fact as to whether a reasonable officer would believe that Plaintiff's actions posed a potential threat to the safety of the Defendants. Striking a "defiant" pose against the commands of an officer can be seen by a reasonable officer as an immediate threat to the officer's safety. See La v. Hayducka, 269 F.Supp.2d 566, 588 (D.N.J. 2003) (determined suspect's behavior to be "threatening and dangerous" because the suspect took a step toward the officer and demonstrated "erratic behavior"). Here, Plaintiff's aggressive shouting of obscenities and refusal to step to the curb, despite Defendants' requests, sufficiently posed an immediate threat to the safety of Defendants.

There is also no genuine issue of material fact as to whether Plaintiff resisted arrest. As Defendants attempted to take Plaintiff into custody, Plaintiff was "flailing his arms and trying to break free." See Garfield Police Incident Report dated October 10, 2005, annexed to the Bevere Cert., as *Exhibit B,* page 2. Plaintiff continued to flail about after Officer Marsh forced him to the ground, at which point Officer Marsh used his discretionary judgment to use pepper spray to subdue Plaintiff. Id. A police officer's use of pepper spray is a non-lethal means to subdue a suspect who is resisting arrest. La, 269 F. Supp. 2d at 580.[1]

While Plaintiff alleges that "a lethal pepper spray dosage (two canisters capable of 16-24 doses were used)," Plaintiff has not introduced any evidence to verify this claim despite ample

---

[1] Under more extreme conditions, courts have held the use of pepper spray by an arresting officer to be a violation of the Fourth Amendment rights of an arrestee. See, e.g., Champion v. Outlook Nashville, Inc., 380 F.3d 893, 901 (6th Cir. 2004). However, the current case is distinguishable from the circumstances in Champion, as the suspect there was mentally retarded, had stopped resisting arrest, was immobilized with both handcuffs and a hobbling device, and was laying underneath the arresting officer at the time pepper spray was used against him.

time to take discovery.[2] (Def.'s Answer at 2, Dec. 21, 2006.)  A *pro se* plaintiff's complaint is held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Nevertheless, the lack of any evidence from such a plaintiff beyond a mere allegation is not sufficient to defeat a motion for summary judgment.  Celotex, 477 U.S. at 322-323.  Here, Plaintiff adduces no evidence whatsoever to support his bare allegation that Defendants used two canisters of pepper spray during the arrest.  Additionally, Plaintiff adduces no evidence whatsoever that two canisters can administer a lethal dose, no evidence that the use of pepper spray itself is potentially lethal, and no evidence of significant ill-effects caused by the pepper spray.  While Plaintiff was treated at a hospital as an out-patient, he was treated for a sprained knee, and not for any effects of the pepper spray.  Therefore, Plaintiff has failed to meet his burden of production necessary to block a summary judgment motion, as he has not made a sufficient showing that a critical element of his excessive force claim is in dispute.

The second prong of the test for qualified immunity in this case requires the court to "determine whether [the Plaintiff's Constitutional] right was clearly established at the time of the alleged violation.  Sutton, 323 F.3d at 250.  A constitutional right in this case is established if no reasonable police officer would believe the arresting officer used excessive force under the circumstances that the Defendants faced on the street.  See Saucier v. Katz, 533 U.S. 194, 202 (2001).  Although Plaintiff alleges a "cover-up by local, county and state personnel," Plaintiff again has offered no proof of any collusion or cover-up.  (Def.'s Answer at 2.)  A reasonable police officer would believe an appropriate amount of force was used, despite Plaintiff's

---

[2] Although pursuant to the November 17, 2005 Scheduling Order discovery was to be completed by June 30, 2006, this Court allowed Plaintiff an extension of discovery up to the time Plaintiff responded to Defendants' Motion for Summary Judgment.

allegation that Defendant Marsh appeared violent and "rear-tackl[ed]" Plaintiff, because Plaintiff tried to avoid arrest by breaking free and running back into his home. Therefore, Defendants satisfy the second prong of the qualified immunity defense.

IV.     <u>Conclusion</u>

Plaintiff has made no showing that a critical element of this case presents any genuine issues of material fact as to whether Defendants violated his Fourth Amendment rights by using excessive force when effectuating Plaintiff's arrest. Plaintiff similarly adduced no evidence to suggest that a reasonable police officer would believe that the amount of force used by Defendants was excessive. For these reasons, Defendants' Motion for Summary Judgment asserting qualified immunity is **GRANTED**[3], and this case is **CLOSED.**

                                                <u>/s/ Faith S. Hochberg</u>
                                                Hon. Faith S. Hochberg, U.S.D.J.

---

[3] In his response to Defendants' Motion for Summary Judgment, Plaintiff adds further complaints of: hate crimes committed by the municipality police, supervisory and support personnel; criminal abuse of authority; case-fixing; police brutality [and] cover-up by local, county and state personnel; EMS personnel participating in the torture of victim; and transport to the hospital delayed for the purpose of reviving victim. Because allegations without facts are "insufficient to withstand Defendants' motion for summary judgment," these claims are also dismissed. <u>Akins v. Deptford Township</u>, 1993 U.S. Dist. LEXIS 6211 at *18 (D.N.J. 1993).